IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
In re:                                                        :   Chapter 11
                                                              :
KB TOYS, INC.                                                 :   Case No. 08-13269 (KJC)
a Delaware corporation, et al.,                               :
                                                              :   Jointly Administered
        Debtors.                                              :
                                                              :
                                                              :   Ref. Docket No. 175
                                                              :
------------------------------------------------------------- x
```

## DEBTORS' OBJECTION TO SUPERTOYS INDUSTRIAL CO. LTD.'S MOTION TO (1) TO COMPEL RECLAMATION PURSUANT TO 11 U.S.C. § 546(c)(2) AND (2) FOR ALLOWANCE OF CHAPTER 11 ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(9)

KB Toys, Inc., a Delaware corporation, and certain of its direct and indirect subsidiaries, the debtors and debtors in possession in the above cases (collectively, the "Debtors"),[1] submit this objection (the "Objection") to Supertoys Industrial Co. Ltd.'s ("Supertoys") Motion to (1) to Compel Reclamation Pursuant to 11 U.S.C. § 546(c)(2) and (2) for Allowance of Chapter 11 Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(9) (the "Motion"). In support of this Objection, the Debtors respectfully represent:

### BACKGROUND

1.      On December 11, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: KB Toys, Inc. (0658), KB Toy of Massachusetts, Inc. (6093), KB Toys Retail, Inc. (3156), KB Toys Gift Cards, Inc. (9425), KB Toys Puerto Rico, Inc. (2716), KB Toys Merchandising, Inc. (4697), Creative Innovations & Sourcing HK, Inc. (6974), Creative Innovations & Sourcing, LLC (9936), and KB Holdings, LLC (7797). The Debtors' executive headquarters' address is 100 West Street Pittsfield, MA 01201.

2. The Debtors' cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

3. On December 17, 2008, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

## A. Prepetition Credit Facility

4. *Prepetition First Lien Facility.* Prior to the commencement of the chapter 11 cases, pursuant to that certain Credit Agreement dated as of January 31, 2007 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Prepetition First Lien Credit Agreement" and together with all other loan, guaranty, security and other documents executed in connection therewith, the "Prepetition First Lien Credit Documents"), among the Borrowers, the Guarantors, General Electric Capital Corporation, as Agent, Collateral Agent and Issuing Bank (the "Prepetition First Lien Agent"), GE Capital Markets, Inc., as Lead Arranger and Bookrunner, and the lenders that are parties thereto from time to time (collectively, together with the Prepetition First Lien Agent, the "Prepetition First Lien Lenders"), the Prepetition First Lien Lenders provided credit and letter of credit facilities to the Borrowers and provided the Borrowers with up to $200 million in aggregate maximum principal amount of revolving commitments, including letter of credit and swingline commitments, with a sublimit for letters of credit of $100 million, all of which were unconditionally guaranteed by the guarantors (collectively, the "Prepetition First Lien Facility").

5. *Prepetition Second Lien Facility.* Pursuant to that certain Amended and Restated Credit Agreement dated as of January 31, 2007 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Prepetition Second Lien Credit Agreement"

and together with all other loan, guaranty, security and other documents executed in connection therewith, the "Prepetition Second Lien Credit Documents", and together with the Prepetition First Lien Credit Documents, the "Prepetition Credit Documents"), among the Borrowers, Guarantors, PKBT Lending LLC, as Agent and Collateral Agent (the "Prepetition Second Lien Agent", and together with the Prepetition First Lien Agent, the "Prepetition Agents") and the lenders that are parties thereto from time to time (collectively, together with the Prepetition Second Lien Agent, the "Prepetition Second Lien Lenders", and collectively with the Prepetition First Lien Lenders, the "Prepetition Lenders"), the Prepetition Second Lien Lenders provided the Borrowers with up to $100,000,000 in aggregate maximum principal amount of revolving commitments, all of which were unconditionally guaranteed by the Guarantors (collectively, the "Prepetition Second Lien Facility").

6. As of the Petition Date, the principal amount of revolving debt owed by the Debtors under the Prepetition First Lien Facility was approximately $65,207,064 and the outstanding face amount of all letters of credit was approximately $29.9 million in standby letters of credit and $1.1 million in documentary letters of credit. The principal amount of debt owed by the Debtors under the Prepetition Second Lien Facility, as of the Petition Date, was approximately $95 million.

### B. The GOB Sales

7. On the Petition Date, the Debtors filed the *Emergency Motion of the Debtors for an Order: (I) Authorizing and Approving the Conduct of Going Out of Business, Store Closing or Similar Themed Sales, With Such Sale to be Free and Clear of All Liens, Claims and Encumbrances; (II) Authorizing the Debtors to Assume the Consulting Agreement; (III) Authorizing Customary Bonuses to Store-Level Employees of Going Out of Business*

*Locations; and (IV) Granting Related Relief* [Docket No. 25] (the "GOB Motion"). By Order dated December 18, 2008, the Court approved the GOB Motion (the "GOB Order"). Beginning on December 19, 2008, the Debtors, with assistance from the Consultant (as defined in the GOB Order), began going-out-of-business sales at their retail locations in accordance with the sale guidelines approved through the GOB Order (the "GOB Sales"). On or about February 8, 2009, the GOB Sales concluded.

C. **Cash Collateral and The Committee Complaint**[2]

8. On the Petition Date, the Debtors filed their *Emergency Motion for Interim and Final Orders (I) Authorizing (A) Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (B) Grant of Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364 and (II) Scheduling a Final Hearing Thereon* [Docket No. 15] (the "Cash Collateral Motion"). On December 12, 2008, Court entered the *Interim Order (i) Authorizing Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Modifying the Automatic Stay, and (iv) Scheduling a Final Hearing* [Docket No. 47] (the "Interim Order"). On January 6, 2009, the Court held a final hearing to consider the relief requested in the Cash Collateral Motion (the "Final Hearing"), and at the conclusion of the Final Hearing, the Court entered the *Final Order (i) Authorizing Use of Cash Collateral, (ii) Granting Adequate Protection, And (iii) Modifying the Automatic Stay* [Docket No. 209] (the "Initial Final Order"), as subsequently amended by the *Amended and Restated Final Order (i) Authorizing Use of Cash Collateral, (ii) Granting Adequate Protection, and (iii) Modifying the Automatic Stay* entered by the Court on January 28, 2009 [Docket No. 334] (the "Amended Final Order" and, together with the Initial Final Order, the "Final Order").

---

[2] Unless otherwise defined in this section of the Objection, all capitalized terms shall have the meanings ascribed to them in the Final Order

9. Subject to the Committee's rights pursuant to paragraph 18 of the Final Order, the Debtors stipulated that, among other things, (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and (b) the Prepetition Obligations constituted legal, valid, binding, and non-avoidable obligations of the Debtors.

10. Pursuant to an agreed order and a stipulation, the Debtors' ability to use cash collateral on a consensual basis has been extended through December 4, 2009.

11. On April 30, 2009, prior to the expiration of the Committee's deadline to challenge the liens and obligations under the Prepetition Second Lien Facility, the Committee initiated an adversary proceeding by the filing of a complaint (the "Committee Complaint") against the Prentice Entities (as defined in the Committee Complaint) and certain present and former officers and directors of the Debtors seeking to, among other things, recharacterize certain claims and recover certain transfers made prior to the Petition Date.

**D. The Joint Motion**

12. On November 9, 2009, the Debtors and the Committee filed the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors, Pursuant to Sections 105(a), 305(a), 349 and 1112(b) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (A) Approving a Stipulation Between the Debtors, the Committee and the Prentice Entities, (B) Approving Procedures for (I) the Distribution of Certain Funds to Holders of Allowed Administrative Claims and (II) the Dismissal of the Debtors' Chapter 11 Cases, and (C) Granting Certain Related Relief* [Docket No. 872] (the "Joint Motion"). Through the Joint Motion, the Debtors and the Committee are requesting, among other things, (i) approval of a stipulation (the "Settlement Stipulation") between the Debtors, the Committee and the Prentice

Entities (as defined in the Joint Motion) that resolves the Committee Complaint and (ii) approval of procedures for (a) the reconciliation, resolution and allowance of December 2008 Stub Rent Claims (as defined in the Joint Motion) and 503(b)(9) Claims (as defined in the Joint Motion) and the making of distributions to holders of such allowed claims and (b) dismissal of the chapter 11 cases. The Joint Motion is currently scheduled for the December 1, 2009 hearing.

**OBJECTION**

13. Supertoys, through the Motion, seeks reclamation pursuant to section 546(c)(2) of the Bankruptcy Code of all Goods shipped to the Debtors during the forty-five (45) day period preceding the Petition Date (the "Reclamation Claim") and the allowance and immediate payment of $60,735.74 resulting from the supply of Goods allegedly provided to the Debtors during the twenty (20) days prior to the Petition Date, pursuant to section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claim").

14. For the reasons set forth below, the Debtors submit that there is no basis to approve the Motion and, therefore, request that the Motion be denied.

**A.    Supertoys is Not Entitled to the Reclamation Claim**

15. Section 546(c) of the Bankruptcy Code constitutes the sole remedy for a creditor seeking to reclaim goods from a debtor in possession. See In re Primary Health Systems, Inc., 258 B.R. 111, 114 (Bankr. D. Del. 2001). Section 546(c) of the Bankruptcy Code does not create an independent right of reclamation; rather, it permits an exception to the trustee's strong arm powers if the seller has a right of reclamation under state law. See id. ("Section 546(c) was not intended to grant any additional rights to creditors."); In re Arlco, Inc. and HFO, Inc., 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999).

16. Accordingly, in a situation where a secured creditor has a duly perfected floating lien on all of the debtor's inventory, courts in this district have followed the majority view in holding "that, even where a seller has a reclamation right, if the value of the floating lien exceeds the value of the inventory, the seller's reclamation right is valueless and, therefore, the seller is not entitled to an administrative claim or lien under section 546(c)(2)." Primary Health Systems, 258 B.R. at 116 (footnote omitted); see also In re Pittsburgh-Canfield Corp. v. Wheeling-Pittsburgh Steel Corp., 2004 WL 943998, at *8 (B.A.P. 6th Cir. May 3, 2004) ("the reclaiming seller is entitled to a lien or administrative expense only to the extent that the value of the specific inventory in which the reclaiming seller asserts an interest exceeds the amount of the floating lien in the debtor's inventory"). In Primary Health Systems, this Court explained:

> Under state law, a reclaiming seller would not have been able to reclaim its goods if the goods were not worth more than the value of the floating lien, because the holder of the first lien would have asserted its rights and been entitled to all of the inventory. Therefore, such a creditor, although it has a right of reclamation, has no right to a secured or administrative claim in bankruptcy because its right of reclamation is valueless. Permitting such a creditor (whose claim outside bankruptcy is nothing more than a general unsecured claim) to elevate its claim to administrative or secured status in bankruptcy would give it a windfall.

Primary Health Systems, 258 B.R. at 117.

17. The liens of the Prepetition Lenders encumber substantially all of the Debtors' existing and after-acquired assets. Through the Final Order, the Debtors stipulated that, among other things, (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and (b) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors. Moreover, other than the Committee Complaint, which the Committee is prepared to resolve through the Settlement

Stipulation, no challenges to the Debtors' stipulations in the Final Order, including those as to the validity and priority of the Prepetition Liens on the Prepetition Collateral, were asserted.

18. Proceeds from the GOB Sales and other miscellaneous asset sales during the chapter 11 case, while sufficient to satisfy the obligations under the Prepetition First Lien Facility, have been insufficient to satisfy the claims of the Second Lien Lenders under the Prepetition Second Lien Facility. Therefore, even if Supertoys has a right of reclamation against the Debtors, it has no right to an administrative claim in this case because the Second Lien Lenders are undersecured, which renders Supertoys' alleged right of reclamation valueless.

19. Accordingly, Supertoys Reclamation Claim should be denied.

**B.**   **Supertoys Cannot Meet Its Burden Under Section 503(b)(9)**

20. Claimants who seek payment ahead of other unsecured claims bear the "heavy burden" of proof to establish that their claim qualifies for priority status. See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999); Microsoft Corp. v. DAK Indus., Inc. (In re DAK Industries, Inc.), 66 F.3d 1091, 1094 (9th Cir. 1995); In re Valley Media, Inc., 279 B.R. 105, 140-41 (Bankr. D. Del. 2002) (Walsh, J.); In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001); In re Columbia Gas Sys., Inc., 224 B.R. 540, 549 (Bankr. D. Del. 1998). The standard of proof is a preponderance of the evidence. See In re G-I Holdings, Inc., 308 B.R. 196, 210 (Bankr. D.N.J. 2001). .

21. Additionally, priority statutes such as section 503 of the Bankruptcy Code are to be strictly construed, see In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001) (Walrath, J.) (citation omitted), to keep administrative expenses at a minimum so as to preserve the estate for the benefit of the creditors. See id.

22. The $60,735.74 amount sought by Supertoys on account of the 503(b)(9) Claim is incorrect because (a) Supertoys incorrectly totaled the cost of the goods listed on the invoices attached as Exhibit A to the Motion, which it relied upon to get the $60,735.74 total and (b) not all of the Goods were received by the Debtors within twenty (20) days prior to the Petition Date.

23. Regarding the former, Supertoys attached three invoices to the Motion: (a) Invoice SI0001520 in the amount of $3,789.72, (b) Invoice SI0001521 in the amount of $48,026.31, and (c) Invoice SI0001557 in the amount of $8,819.71. These three amounts total $60,635.74, not $60,735.74. Applying this $100.00 deduction to the $60,735.74 sought by Supertoys reduces the 503(b)(9) Claim to $60,635.74.

24. With respect to the latter, pursuant to section 503(b)(9) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed, administrative expenses … including…the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Supertoys must therefore prove: (i) it provided "goods" to the debtor, (ii) the goods were received by the debtor, (iii) the receipt occurred within twenty days of the Petition Date, and (iv) the goods were sold in the ordinary course of business. 11 U.S.C. §503(b)(9).

25. Here, Supertoys cannot meet its burden to meet the statutory requirements of section 503(b)(9) of the Bankruptcy Code as not all of the Goods were received by the Debtors within twenty (20) days prior to the Petition Date. The Debtors received the $3,789.72 worth of goods referenced on Invoice SI0001520, one of the invoices attached as Exhibit A to the Motion, on November 19, 2008, which is outside of twenty (20) days prior to the Petition

DB02:7737844.3

067890.1001

Date. As a result, only $56,846.02 worth of the Goods were received by the Debtors within twenty (20) days prior to the Petition Date.

26. Therefore, taking into consideration both of the reductions, the Debtors submit that only $56,846.02 of the $60,735.74 sought by Supertoys is entitled to be treated as an administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code.

C. **Supertoys is Not Entitled to Immediate Payment of the 503(b)(9) Claim.**

27. Nothing in section 503(b) of the Bankruptcy Code requires the immediate payment of an administrative expense claim. Indeed, other courts, including this Court, have held that based on the sui generis nature of an administrative claim arising under section 503(b)(9) of the Bankruptcy Code (i.e. a prepetition claim entitled to a priority typically reserved for postpetition claims), and the fact that Congress was silent on when such claims needed to be paid, there exists no statutory mandate for payment of administrative claims arising under section 503(b)(9) of the Bankruptcy Code outside of a plan. See, e.g., In re Bookbinders' Rest., Inc., Case No. 06-12302(ELF), 2006 Bankr. LEXIS 3749 (Bankr. E.D. Pa. 2006) ("The text of § 503(b)(9) neither states nor even implies that allowance of the expense encompasses an unqualified right to immediate payment. Nor does the text of the provision suggest that an administrative expense allowed under § 503(b)(9) is to be treated in a more favorable manner than any other allowed § 503(b) administrative expense."); In re Werner Holding Co., Inc., Case No. 06-10578 (KJC), transcript of November 9, 2006 hearing [Docket No. 696], at 21-22 (same). Such payments are only required to confirm a plan of reorganization. See 11 U.S.C. § 1129(a)(9).

28. Any payment of an administrative expense prior to plan confirmation remains wholly subject to the discretion of the bankruptcy court. Further, as noted by the court

in the Global Home Products case regarding the timing of payment of claims arising section 503(b)(9) of the Bankruptcy Code, "[a]rguably, prepetition vendor claims are never payable in the ordinary course of business because of the intervening bankruptcy and the automatic stay, even if afforded administrative expense priority." In re Global Home Prods., LLC, Case No. 06-10340 (KG), 2006 Bankr. LEXIS 3608, at *12 (Bankr. D. Del. December 21, 2006) (citing Alan N. Resnick, THE FUTURE OF CHAPTER 11: A SYMPOSIUM COSPONSORED BY THE AMERICAN COLEGE OF BANKRUPTCY: THE FUTURE OF THE DOCTRINE OF NECESSITY AND CRITICAL VENDOR PAYMENTS IN CHAPTER 11 CASES, 47 B.C. L. Rev. 183, 204-205 (2005)).

29. In the present case, the request for immediate payment of the 503(b)(9) Claim should be denied. Pursuant to section 362(a)(1) of the Bankruptcy Code, the obligation to pay any 503(b)(9) Claim is stayed. That section stays, among other things, "the commencement…of a judicial, administrative, or other action or proceeding…to recover a claim against the debtor that arose before the commencement of the case under this title…." 11 U.S.C. § 362(a)(1). While section 503(b)(9) of the Bankruptcy Code, as enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), permits parties to seek allowance of an administrative claim for the value of goods received by the debtor in the twenty day period prior to the date of filing of a bankruptcy petition, BAPCPA did not modify section 362(a)(1) to allow a party to recover (or seek payment of) a claim arising under section 503(b)(9), nor did it establish an exception to the automatic stay under section 362(b) which would parties to seek immediate payment of such claims.

30. In addition, In re Garden Ridge Corp., 323 B.R. 136 (Bankr. D. Del. 2005), the Court noted that in determining whether to exercise its discretion to direct immediate payment of an administrative expense claim, the Bankruptcy Court should balance "prejudice to

the debtor, hardship to the claimant, and . . . detriment to other creditors." Id. at 143. Supertoys, in the Motion, did not even address this hardship issue and provided no evidence of hardship to itself, if the 503(b)(9) Claim was not immediately paid.

31. The Debtors have conducted the GOB Sales and liquidated their assets. Holders of claims arising under section 503(b)(9) of the Bankruptcy Code, or certain other administrative claims, will not be paid in full. There are no remaining significant assets that the Debtors can monetize in a cost-efficient manner for the benefit of the estates or creditors, including the Prepetition Second Lien Lenders who were granted a lien and superpriority claim on substantially all of the Debtors' assets through the Final Order.

32. Simply put, the payment of Supertoys' 503(b)(9) Claim should be in accordance with the proposed Settlement Stipulation. In other words, payment should not immediately or in full. Through the proposed Settlement Stipulation, holders of allowed section 503(b)(9) claims will share pro rata the amount of approximately $1,550,000 resulting in a distribution of approximately 57% of the allowed amount of such claims. Assuming the Settlement Stipulation is approved, allowing Supertoys full and immediate payment of the 503(b)(9) Claim and would result in significantly different treatment to the other similarly situated holders of allowed section 503(b)(9) claims. Such a result is prejudicial, detrimental and unfair to the other creditors.

33. Accordingly, there is no basis for Supertoy's 503(b)(9) Claim to be paid in full or immediately.

## RESERVATION OF RIGHTS

34. The Debtors reserve their right to object to the Reclamation Claim or the 503(b)(9) Claim on grounds other than as stated herein, including but not limited to, any setoff

DB02:7737844.3

067890.1001

defense the Debtors may have with respect to the Reclamation Claim or any amount of the 503(b)(9) Claim.

## CONCLUSION

WHEREFORE, the Debtors respectfully requests entry of an order denying the Motion, except to allow the 503(b)(9) Claim as an administrative expense priority claim pursuant to section 503(b)(9) of the Bankruptcy Code in the amount of $56,846.02, subject to the Debtors' right to seek to setoff against the Reclamation or 503(b)(9) Claim.

Dated: Wilmington, Delaware
November 24, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Joel A. Waite (No. 2925)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

WILMER CUTLER PICKERING HALE AND DORR LLP
Mitchel Appelbaum (BBO #558579)
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Counsel for the Debtors and
Debtors in Possession

- 13 -
DB02:7737844.3
067890.1001